IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-58-GCM

| | |
|---|---|
| ABIGAIL WILSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GASTON COUNTY, and JIM N. ) <br> PUTNAM, III, ) <br> ) <br> Defendants. ) <br> _____ ) | ORDER |

THIS MATTER comes before the Court on Defendant Gaston County's Partial Motion to Dismiss [Doc. No. 13], Plaintiffs' response [Doc. No. 17], and Defendants' reply [Doc. No. 18]. Also before the Court is Defendant Putnam's Partial Motion to Dismiss [Doc. No. 8], Plaintiff's response [Doc. No. 12], and Defendant's reply [Doc. No. 16]. The matters, fully briefed by the parties, are ripe for determination. For the reasons set forth below, the Court will grant in part and deny in part Defendant County's Partial Motion to Dismiss and will grant Defendant Putnam's Partial Motion to Dismiss.

I. **PROCEDURAL BACKGROUND**

On January 9, 2013, Plaintiff initiated this action by filing her Complaint in the Superior Court of Gaston County. As to Defendant County, she alleged battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent retention and supervision and violations of the Family Medical Leave Act. As to Defendant Putnam, Plaintiff alleged battery, intentional infliction of emotional distress and negligent infliction of emotional distress. On January 29, 2013, Defendant County removed to this Court with Defendant Putnam's

1

consent.

On March 6, 2013, Defendant Putnam filed a Partial Motion to Dismiss arguing that that the negligent infliction of emotional distress claim must be dismissed because the North Carolina Industrial Commission has exclusive jurisdiction over the claim. On March 26, 2013, Defendant County filed its Partial Motion to Dismiss arguing that both the negligent infliction of emotional distress claim and the negligent hiring and supervision claim must be dismissed on the same basis.

## II. <u>FACTUAL BACKGROUND</u>

Pursuant to her Complaint, Plaintiff contends that Defendant Gaston County is her employer and Defendant Putnam is her coworker. Plaintiff alleges that Defendant Putnam sexually harassed her. Based upon the alleged conduct, Plaintiff pleads three causes of action against Defendants Putnam and the County including battery, intentional infliction of emotion distress and in the alternative, negligent infliction of emotional distress. In addition, Plaintiff also pled negligent hiring and supervision as to Defendant County. In paragraph 52 of her Complaint, Plaintiff states "[e]ven assuming Defendant County and Defendant Putnam's conduct did not give rise to the intentional infliction of emotional distress claim, they otherwise acted negligently in engaging in conduct that was reasonably foreseeable to cause Plaintiff severe emotional distress.

According to Plaintiff, the following is a list of the facts most relevant to the instant motions:

- "In November 2012, Abigail began facing a new, even more concerning problem at work. During that month, the County transferred Defendant Putnam to Abigail's shift and they started working together. Upon information and belief, the County transferred Putnam

after another female paramedic had accused him of sexual harassment on his previous shift. Upon information and belief, that prior harassment was physical. For a brief time, Abigail and Defendant were friends. This changed quickly when Defendant Putnam began sending sexually explicit text messages, roughly 100 total." [Doc. 1-3 ¶ 24].

- "Some of Defendant Putnam's text messages included sexually explicit photographs of his penis. Those pictures appeared to have been taken at work because he was wearing his uniform top and the backgrounds were the station two and four restrooms. Abigail repeatedly told Putnam to stop sending her text messages, but to no avail. Eventually, Abigail put a data block on her phone, which prevented pictures from being received; however, the sexually explicit text messages continued. They often contained propositions for sex like 'I want to fuck you.' Other texts asked Abigail to send him pictures of herself naked." [Doc. No. 1-3 ¶ 25].

- "When Abigail would not acquiesce to Putnam's vile advances, the sexual harassment turned physical and eventually violent. On or around late November 2011, Defendant Putnam began touching Abigail during her shift. He pulled her hair, poked her ribs, and rubbed the back of her neck and face. He once slapped Abigail's bottom so hard that it left a hand-print bruise. This incident was caught on surveillance tape." [Doc. No. 1-3 ¶ 26].

- "Possibly the most egregious incident occurred in early December 2011. During a shift that day, Defendant Putnam told Abigail that he wanted to "fuck her" at least three times. Abigail told him to stop, but that only frustrated him. In response, Defendant Putnam, who was standing on the ground, reached up and grabbed Abigail from her position in the truck. She tried to resist, but he was too big and strong (approximately six feet six inches

(6'6) tall). He used such force in yanking her from the truck that it left bruises on Abigail's thigh. She nearly lost her balance as she was pulled from the truck, but Defendant Putnam caught her only to then pin her against the truck. Again, Abigail struggled, but could not get away while her groped her breasts and pelvic area for what seemed to her like an eternity." [Doc. No. 1-3 ¶ 27].

- "Predictably, defendant Putnam used his continued access to torment Abigail. During shift change, he would say things like: "You're a bitch. You knew my wife was pregnant. You caused me lots of problems." He regularly called her "bitch" to others as well. He also repeatedly threw his keys at Abigail when she came on shift. When he walked past her, he would intentionally dip his shoulder and run into her." [Doc. No. 1-3 ¶ 32].

- "Between early December 2011 and February 2012, Abigail reported Defendant Putnam's sexual harassment to her shift level superiors – twice to Travis Adams and once to Billy Mitchell She told them about the bruises from defendant Putnam, sexually explicit photographs, and sexual comments. Upon information and belief, others on Abigail's shift, another female employee and Phil Parker, also complained to Adams and/or Mitchell about Putnam's behavior. Adams and McConnell (who temporarily filled in for Mitchell) told Abigail that they would handle the matter 'internally' and discouraged her from going to Human Resources. Unfortunately, handling the matter internally meant doing nothing, as there was no investigation and the sexual harassment continued." [Doc. No. 1-3 ¶ 28].

- "HR investigated the altercation between Defendant Putnam and Parker, during which time Abigail hesitantly reported some of Defendant Putnam's conduct during an

interview with HR. On or around March 4, 2012, Abigail made a more detailed official complaint. She also provided HR with a list of witnesses. During the investigation, Amia Massey in HR watched the surveillance video in which Defendant Putnam slapped Abigail's behind. However, overall, HR's investigation was rather cursory. It did not contact most of the witnesses that Abigail provided, some of whom were eye-witnesses to Defendant Putnam's behavior toward her. Chief Lamphiear told Abigail that Defendant Putnam admitted to almost all of the allegations against him." [Doc. No. 1-3 ¶ 30].

- "Despite the formidable evidence against Defendant Putnam, the County merely reassigned him to a different shift. In a sad, ironic twist, the County conspired to deliberately transfer Abigail to the same truck in which Putnam was assigned. As a result, Abigail was forced to continue to interact with Defendant Putnam on a regular basis. The County took this action despite having seven different trucks to which it could have transferred Abigail." [Doc. No. 1-3 ¶ 31].

- Abigail complained about Defendant Putnam's behavior during shift-change to her shift supervisor Travis Adams. He responded that Abigail should 'put on her big girls pants and deal with it.'" [Doc. No. 1-3 ¶ 33].

- "Abigail was not Putnam's only victim. Upon information and belief, another employee on Abigail's shift with Putnam told Adams that she had to slap Putnam to keep him from kissing her against her will. Her complaints were eerily similar to Abigail's; Putnam poked her, made inappropriate comments, sent her unwanted text messages. Yet, Adams failed to inform HR." [Doc. No. 1-3 ¶ 35].

- "As a proximate and foreseeable result of Defendant County and Defendant Putnam's conduct, Plaintiff has suffered severe emotional distress, severe mental anguish and

anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed in an amount in excess of Ten Thousand Dollars ($10,000.00), and is entitled to recover damages in an amount in excess of Ten Thousand Dollars." ($10,000). [Doc. No. 1-3 ¶¶ 42, 49, 54].

Plaintiff pled an IIED cause of action against both Defendants based on the facts above. Alternatively, she pled NIED claims against both Defendants based largely on the same set of facts.

### III. STANDARD OF REVIEW

1. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. In determining whether subject matter jurisdiction exists under Rule 12(b)(1), a court "is to regard the pleadings' allegations as mere evidence on the issue . . .". *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). For Rule 12(b)(1) motions, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set for specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (internal citations omitted).

2. 12(b)(6)

To survive a motion to dismiss, the plaintiff must make factual allegations which "raise a right to relief above the speculative level" and plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 545-47 (2007), *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The court must view the complaint in the light most favorable to the plaintiff and take the plaintiff's allegations as true. *Randall v. United States*, 30

F.3d 518, 522 (4th Cir. 1994). However, the Court is not bound by the Plaintiff's legal conclusions, as the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the Amended Complaint. *Id.* (internal citations omitted).

## IV. ANALYSIS

### A. Negligent Infliction of Emotional Distress

Both Defendants argue that North Carolina law indicates that a claim of negligence arising from the workplace, such as NIED from workplace harassment, has exclusive jurisdiction through the North Carolina Industrial Commission and not the court system and that Plaintiff's NIED claims must be dismissed for want of subject matter jurisdiction. Both Defendants also argue that Plaintiff does not state a claim for negligence because her NIED claims against Defendants are based on allegations of intentional acts of sexual harassment.

In response, Plaintiff argues that her NIED claim is not subject to the Workers' Compensation Act because she seeks purely emotional damages and that she pleads facts that give Defendants notice of her NIED claim's grounds and make that claim, at the very least, plausible.

A claim of negligent infliction of emotional distress requires three elements: (1) the defendant negligently engaged in the conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) the conduct did in fact cause plaintiff severe emotional distress. *Johnson v. Ruark Obstertrics & Gynocology Assoc.*, *PA.*, 327 N.C. 283, 304, 395 S.E.2d 85 (1990). As to the first element, Defendant contends that Plaintiff has only alleged intentional conduct, while merely reasserting the same intentional conduct in support of her NIED claim.

Plaintiff argues that she had pled sufficient facts "that make [a] NIED claim plausible." However, the Court notes that Plaintiff's NIED claims is not based on new or different facts from the IIED claim, a fact which Plaintiff essentially concedes. [Doc. No. 17 at 6 and Doc. No. 12 at 4]. Indeed, it appears that the NIED claim is simply a relabeling of the allegations of intentional actions as negligence.

"Without question, basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence. This manner of pleading and proving negligent infliction of emotional distress has repeatedly been held to be deficient." *Riepe v. Sarstedt, Inc.,*2010 WL 3326691 (W.D.N.C) (*citing Mitchell v. Lyndall Inc.,* 16 F.3d 410) (4th Cir. 1994) (affirming dismissal of NIED claim because the complaint contained "merely a single, conclusory allegation that Lyndall was negligent; the material factual allegations charge[d] nothing but intentional acts"); *see also Locklear v. Pearson County Board of Education*, 2006 WL 1743460 (M.D.N.C. June 22, 2006) (dismissing claim of negligence where factual allegations charges only intentional conduct by defendants). Recently, in *Baldwin v. Tradesmen Int'l, Inc.,* 2013 WL 11923149 (E.D.N.C. 2013), the Court, in analyzing a NIED claim against an employer, noted that the NIED claim against the employer was based on the sexual harassment itself and not the handling of the complaints of sexual harassment. The Court held that "[t]he allegations of plaintiffs' complaint clearly indicate a pattern of intentional conduct on the part of [the harasser], where [the harasser] is alleged to have repeatedly directed sexually explicit comments at plaintiffs over the course of three weeks. . . . *See also Barbier v. Durham Cnty. Bd. Of Educ.,* 225 F.Supp.2d 617, 631 (M.D.N.C. 2002)(finding that "acts of sexual harassment are 'inherently intentional.'" (*quoting Thomas v. N. Telecome, Inc,.* 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000))."

The undersigned has reviewed the allegations in Plaintiff's Complaint and finds that they do not sound in negligence. Instead, Plaintiff alleges intentional acts of sexual harassment and bases her NIED claim on these same acts. The intentional acts alleged cannot serve as the basis for Plaintiff's NIED claim. Therefore, the Court concludes that Plaintiff's NIED claims against Defendant County and Defendant Putnam must be dismissed for failure to state a claim for relief.

### B. Negligent Supervision and Retention

Plaintiff alleges a negligent supervision and retention claim against Defendant County. Defendant County argues that this claim is under the exclusive jurisdiction of the North Carolina Industrial Commission and therefore must be dismissed.

In order to state a claim for negligent supervision and retention against Defendant County, Plaintiff must allege that Defendant Putnam committed a tortious act that resulted in injury and that prior to the act, Defendant County knew or had reason to know of Defendant Putnam's conduct. *Graham v. Hardee's Food Sys., Inc.,* 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996). It is "[a]n essential element" of a claim of negligent retention or supervision "that an employee of the employer 'committed a tortious act resulting in plaintiffs' injuries.'" *Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 774 (4th Cir. 1997) (*quoting Waddle v. Sparks*, 331 N.C. 73, 414 S.E.2d 22, 29 (1992)). While the Fourth Circuit has determined that sexual harassment cannot serve as the "tortious act" for purposes of stating a negligent retention or supervision claim because sexual harassment is not a common law tort in North Carolina, *McLean v. Patten Communities, Inc.,* 332 F.3d 714, 719 (4th Cir. 2003),[1] here Plaintiff has also alleged intentional infliction of emotional distress as well as battery. In reviewing the allegations

---

[1] The Court notes that at least one North Carolina court has stated that "no North Carolina Court has ever stated that a sexual harassment claim cannot support a claim for negligent supervision/retention." *Barbier v. the Durham County Board of Education*, 225 F. Supp.2d 617 n 11 (2002).

in Plaintiff's Complaint, Plaintiff has pled that Defendant Putnam committed a tortious act; that upon information and belief she was not Defendant Putnam's first victim; that she and a previous victim reported Defendant Putnam's conduct; and that she was injured by Defendant Putnam's conduct. Therefore, taking all of the factual allegations of the Complaint as true and construing them in the light most favorable to the Plaintiff, the undersigned concludes that Plaintiff has sufficiently pled her claim of negligent supervision and retention.

With respect to Defendant County's argument that the negligent supervision and retention claim must be dismissed because it falls under the exclusive jurisdiction of the North Carolina Industrial Commission, the Court is not persuaded by the County's brief and will therefore deny the County's motion.[2] Indeed, the two cases cited by the County in support of their argument are distinguishable. First, with respect to *Baldwin v. Tradesmen Int'l, Inc.,* 2013 WL 1192314 (E.D.N.C March 22, 2013), the Court denied Plaintiffs' motion to amend the complaint to include a negligent retention and supervision claim because the plaintiffs failed to state a negligence claim against the defendants, not because such claim was under the exclusive jurisdiction of the North Carolina Industrial Commission.[3] Likewise, *Shaw v. Goodyear Tire & Rubber Co.,* 737 S.E.2d 168 (2013), is distinguishable in that the complaint did not even allege a claim involving negligent supervision and retention. Further, the *Shaw* Court went out of its way to point out that its case was unique in that the NIED claim at issue was defendant employer's mishandling of plaintiff's sexual harassment complaint and not the actual harassment itself.

---

[2] A plaintiff can only bring workplace claims classified as "accidents" under the Act and these claims can be brought under the Act alone. *Shaw*, 737 S.E.2d at 177. The Act defines "accident" as "(1) an unlooked for and untoward event which is not expected or designed by the injured employee; (2) a result produced by a fortuitous cause." *Id.* At 177 (*quoting Woodson v. Rowland*, 329 N.C. 330, 348, 407 S.E.2d 222, 233 (1991) (citations and quotation marks omitted).

[3] The Court also declined plaintiffs' invitation to infer from the allegations torts of assault and battery because they were not pled. Here battery is specifically pled.

## IV. **CONCLUSION**

Based upon the foregoing, IT IS HEREBY ORDERED that Defendant County's Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 13] is GRANTED in part and DENIED in part. The County's Motion is GRANTED in part in that Plaintiff's NIED claim is DISMISSED, but DENIED in part in that Plaintiff's Negligent Retention and Supervision claim survives the motion and remains a part of the Complaint. Defendant Putnam's Partial Motion to Dismiss [Doc. No. 8] is GRANTED in that Plaintiff's NIED claim is DISMISSED.

IT IS SO ORDERED.

Signed: May 6, 2013

Graham C. Mullen
United States District Judge